## CHICAGO, R. I. & P. R. CO. v. MONTAGUE.

No. 5983—Opinion Filed Dec. 23, 1919.

(Syllabus by the Court.)

### Carriers—Ejectment of Passenger—Sufficiency of Evidence.

Record examined, and held, that the evidence adduced at the trial was not sufficient to support the judgment rendered.

Error from District Court, Comanche County; J. T. Johnson, Judge.

Action by Bert Montague against the Chicago, R. I. & P. R. Co. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

C. O. Blake, R. J. Roberts, W. H. Moore, J. G. Gamble, K. W. Shartel, and Stevens & Myers, for plaintiffs in error.

McElhoes, Ferris & Rhinefort, for defendant in error.

KANE, J. This was an action commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below, wherein the plaintiff prayed damages in the sum of $1,500 for being ejected from one of the defendant's passenger trains at or near the town of Yukon. Hereafter, for con-

venience, the parties will be called "plaintiff" and "defendant", respectively, as they appeared in the trial court.

Upon trial to a jury there was a verdict in favor of the plaintiff for $100, upon which judgment was duly entered, to reverse which this proceeding in error was commenced.

There is but one question presented for review, and that is the sufficiency of the evidence to sustain the verdict and judgment rendered below. The undisputed facts disclosed at the trial may be briefly summarized as follows:

The plaintiff, with his wife and two children, entered one of the passenger trains of the defendant at Lawton, for the purpose of going to Oklahoma City to attend the state fair. At the initial point of the trip the plaintiff purchased a ticket for his wife from Lawton to Oklahoma City; the children being apparently under age, no transportation was provided for them. When the train auditor passed through the train for the purpose of taking up tickets and collecting fares, the plaintiff, for his own transportation, tendered a live-stock contract authorizing him to ride upon a freight train between Lawton and Oklahoma City for the purpose of accompanying a carload shipment of sheep as caretaker, section 9 of which provided as follows:

"That this contract does not entitle the holder thereof, or any other person, to ride on any train except on train in which the live stock is transported, and then only for the purpose of caring for such live stock," etc.

The auditor refused to accept this pass, for the reason that the shipment of sheep was not being transported in his train, and plaintiff paid cash fare to Anadarko, at which point passengers for Oklahoma City changed cars and there was also a change of train auditors. Plaintiff, his wife, and two children changed cars at Anadarko, and when the auditor passed through collecting tickets and fares after leaving this point the plaintiff again tendered his stock pass, which was rejected for the same reason, whereupon the plaintiff paid his cash fare to Chickasha. This time the auditor told the plaintiff that he could not ride in a passenger train on that sort of a pass and, after punching his wife's ticket, advised the plaintiff to purchase a ticket from Chickasha to Oklahoma City, which the plaintiff subsequently did. In conversation with the agent at Chickasha while purchasing the ticket, the plaintiff testified, the agent suggested that he present his live-stock contract or pass and have the same re-

fused, and that if there was any refund coming to him, because of this refusal, he would be in position to obtain the same, although he had paid his fare or purchased a ticket. The plaintiff took a receipt from the Chickasha agent for the ticket from Chickasha to Oklahoma City. At El Reno there was another change of cars and of train auditors, and the plaintiff, with his wife and two children, took seats in the chair car on the north side, about three seats from the front of the car. The auditor, upon entering the car, called for tickets, and as he approached the plaintiff observed that he was sitting next to the aisle, and that his wife was reclining near him in the same seat apparently asleep, next the window, and that the two children sat opposite facing them in a turned seat. The plaintiff tendered the auditor one full fare ticket and the live-stock contract, without any comment, he says. The auditor says the plaintiff nodded toward his wife and saying, "my wife," as he handed the ticket and pass to him. The auditor advised the plaintiff that the live-stock contract was not good for transportation upon a passenger train, and plaintiff answered that he had paid all the fare he intended to pay. That he was not going to pay any more fare. Later, the conductor came to him (the plaintiff) and again explained to him that the live-stock contract was not good for transportation on a passenger train, and advised him to buy a ticket for himself or pay his fare, or he would be compelled to eject him from the train at Yukon. The plaintiff made the same reply as formerly, that he was not going to pay any more fare than he had paid. As the train approached Yukon the auditor, conductor, and other trainmen again expostulated with plaintiff, advising him to buy a ticket or pay his fare. The plaintiff, still refusing to pay any fare, was ejected without force or violence, and just before leaving the car, stopped and took the names of several persons whom he wished as witnesses to the transaction and told his wife to wait for him, that he would be in on the next train. After remaining at Yukon about an hour, the plaintiff took the first train east, reaching Oklahoma City about midnight, where he found his wife and children.

The manner in which the plaintiff handled his wife's transportation throughout the journey is told in the following portion of his testimony:

"Q. You stated that your wife, a few minutes ago, had her own transportation. That was true? A. Yes, sir. Q. Did you give your wife's transportation to the auditor or the conductor of the train from Lawton to Anadarko, or did she give that ti him? A. She

gave it to him from Lawton to Anadarko. Q. From Anadarko to Chickasha, when he came and commanded fare from her, did she give that to the auditor, give her own transportation to the auditor? A. She handed it to me and I handed it to him. Q. From Chickasha to El Reno, was there any collection made of her fare from her or from you? A. From Chickasha to El Reno I was in the smoker part of the time and when I paid my fare I was in the smoker, I was not with her. Q. From El Reno to Oklahoma, when the auditor came around to collect the fares, you say she didn't give him her fare to the auditor, but you did give one full fare and this stock contract to the auditor at that time? A. I did; together. Q. She was lying down there asleep at that time. A. Yes, sir. Q. Why didn't you ask her to give the auditor her fare at the time he took this full fare for your own transportation? A. I was not collecting tickets. I didn't know but what she had already given it to him before that."

In presenting their sole ground for reversal, counsel for defendant say in their brief:

"We believe there was not sufficient evidence of the good faith of the plaintiff to justify the verdict of the jury, and that there was not sufficient evidence showing that the plaintiff had tendered transportation to the auditor or conductor near Yukon which was sufficient to entitle him to ride upon the defendant's train as a passenger."

We agree with counsel that there was no evidence whatever tending to show good faith on the part of the plaintiff, conceding the testimony of the plaintiff on this point to be true. In our judgment it tends more strongly to show bad faith than good faith on his part. In the circumstances of the case there was but one reasonable inference to be drawn from the conduct of the plaintiff in presenting the stock pass and ticket together, and that was that he was presenting the stock pass for his own transportation and the ticket for the transportation of his sleeping wife, who was reclining by his side in the same seat. It must have been obvious to the plaintiff that this was the inference the auditor drew from the circumstances, and that if he persisted in this course of conduct it would result in his being removed from the train at Yukon. Even the most ordinary exercise of good faith on the part of the plaintiff would have cleared up this situation and avoided all grounds for misunderstanding. At no time during his several conversations with the auditor and the other members of the train crew, or, finally, when he was giving his wife directions to await his coming on the next train, did the plaintiff suggest or indicate that the ticket he had offered with the pass was for his own transportation, and not for the transportation of his wife.

He made no explanation to the auditor whatever, who was apparently laboring under a misapprehension of the facts. On the whole, a careful reading of the record convinces us that there was no evidence reasonably tending to show good faith on the part of the plaintiff. On the contrary, the reverse is true, the testimony of the plaintiff himself showing a clear purpose to mislead and deceive the auditor with the view of bringing on the very consequences which were sure to follow his conduct, to wit, his ejection from the train.

For the reasons stated, the judgment of the trial court is reversed and cause remanded, with directions to enter judgment for defendant.

OWEN, C. J., and PITCHFORD, HIGGINS, and BAILEY, JJ., concur.